## POMPEY v. KING et al.

No. 14500—Opinion Filed Dec. 4, 1923.

Rehearing Denied April 15, 1924.

(Syllabus.)

### Marriage—Validity of Plural Marriage—Indian Custom.

Prior to the dissolution of the tribal government of the Seminole Indians, the United States expressly recognized the right of the Seminole Indians to regulate their own domestic affairs, and to regulate marriages between members of the tribe by the laws, customs, and usages of the tribe. In the absence of a written law prohibiting plural marriages, evidence tending to establish a custom of the Seminole Tribe of Indians permitting plural marriages was admissible, and evidence having been introduced tending to prove a custom permitting plural marriages, it was error for the court to instruct the jury that plural marriages were not permitted among the Seminole Indians, the existence or nonexistence of the custom being a question of fact to be determined by the jury.

Error from District Court, Seminole County; Geo. C. Crump, Judge.

Action by John Pompey against A. J. King and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

Willmott & Roberts, for plaintiff in error.

Pryor & Stokes, for defendants in error.

COCHRAN, J. This action was commenced by the plaintiff in error against the defendants in error to recover certain lands in

Seminole county. The lands in controversy were allotted to Izora Lottie, enrolled as a minor Seminole freedman. This minor died about August 4, 1901, unmarried and without issue. The plaintiff in error was the father of the minor and claims an undivided one-half interest in the property by reason thereof. The defendants in error claim title through a conveyance from the mother of the minor. It is the contention of the defendants in error that Izora Lottie was an illegitimate child of John Pompey and Rose Lottie, and that the mother inherited the entire allotment because of the illegitimacy of the child.

It is the contention of the plaintiff in error that Izora Lottie was the legitimate child of John Pompey and Rose Lottie. The plaintiff in error contends that John Pompey and Rose Lottie were married according to the custom and usage of the Seminole Tribe of Indians, while the defendants in error contend that he was incapable of entering into the marriage relation with Rose Lottie because he at that time had a living wife with whom he continued to live. It is conceded by the plaintiff in error that John Pompey did have a living wife with whom he was living at the time it is contended he married Rose Lottie. The question presented is whether plural marriages were permitted under the laws and customs of the Seminole Tribe of Indians prior to the dissolution of the tribal government. This is the only question necessary to be determined in this case, as the trial court instructed the jury that a man and woman were not competent to contract a marriage while either has a wife or husband living, and that such contract would be void. If plural marriages were permitted among the Seminoles at the time it is alleged the marriage between John Pompey and Rose Lottie was contracted, the instruction of the trial court was erroneous and prejudicial to the rights of the plaintiff in error. It is conceded by the defendants in error that the validity of this marriage is to be determined according to the tribal laws, customs, and usages of the Seminole Tribe of Indians, but it is insisted that the tribal laws of the Seminole Tribe of Indians, as quoted in Palmer v. Cully, 52 Okla. 454, 153 Pac. 154, should be interpreted as preventing plural marriages. The law referred to does not prohibit plural marriages either directly or indirectly, and our attention has been called to no other provision of the Seminole law which prohibits plural marriages. In these circumstances, we have the identical question presented which was before the court in Oklahoma Land Co. v. Thomas, 34 Okla. 681, 127 Pac. 8, where the question

under consideration was the custom of the Creek Nation prior to October 22, 1881, relative to plural marriages, and in which the court held that, there being proof offered tending to establish a custom of the Creek Nation permitting plural marriages, it was error for the trial court to direct a verdict. In the instant case, there was testimony tending to prove a Seminole custom permitting plural marriages. No law of the Seminole Nation prohibiting plural marriages has been called to our attention, hence, we are of the opinion that the learned judge committed error in preventing the jury from determining whether, under the facts proved, the custom existed among the Seminole Indians permitting plural marriages. That this question is one of fact to be submitted to the jury was also held in Oklahoma Land Co. v. Thomas, upon the second appeal, which is reported in 72 Oklahoma, 179 Pac. 937.

It is next contended that the judgment of the trial court should be affirmed because the undisputed evidence in this case shows that the allottee died after enrollment and prior to receiving the certificate of allotment and descent is controlled by the rule announced in Renfro v. Olentine, 72 Oklahoma, 178 Pac. 119. This was a disputed question of fact, and the record does not show that the evidence was uncontradicted on that point. The question was one of fact to be determined as any other fact in the case, and for that reason it cannot be said that the judgment of the trial court should be affirmed on that ground.

The judgment of the trial court is reversed and cause remanded, with directions to grant a new trial.

JOHNSON, C. J., and KENNAMER, NICHOLSON and BRANSON, JJ., concur.